

WASHINGTON  | BALTIMORE  | PHILADELPHIA  | WILMINGTON  | VIRGINIA

the perfect legal partner®

William Pillsbury, Esquire
(267) 338-1321 (Direct Dial)
(267) 338-1335 (Facsimile)
wpillsbury@offitkurman.com

May 22, 2015

*Via ECF Filing*

Honorable Joan M. Azrack
United States District Judge for the
United States District Court of the
Eastern District of New York
100 Federal Plaza
Central Islip, NY  11722

      Re:    *McDermott et al. v. The Federal Savings Bank, et al.*, 14-cv-6657 (JMA) (GRB)

Dear Judge Azrack:

      This office represents the Defendants, The Federal Savings Bank, John T. Calk, and Steve Calk, in the above-referenced matter.  The Plaintiffs have filed a claim against Defendants alleging that Defendants failed to pay overtime compensation due to Plaintiffs under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

      By letter dated May 13, 2015, Plaintiffs have moved for a pre-motion conference to seek leave to file a motion seeking an order for conditional certification of "all persons employed by the Defendants as loan officers within the last three years."  For the reasons discussed below, such relief should not be granted.

      First, a class of loan officers is not a valid class to have certified.  Defendant The Federal Savings Bank employed two types of loan officers, Direct Mortgage Bankers and the Outside/Retail Mortgage Bankers.  This distinction was vital in a recently settled similar action brought against Defendant The Federal Savings Bank, <u>Manning v. The Federal Savings Bank</u>, D. Kansas, No. 12-cv-2640 JTM/KMH.  In <u>Manning</u>, potential subclasses based on these distinctions were recognized and settlement was reached with "on a class-wide basis on behalf of the Direct Mortgage Bankers", while the Outside/Retail Mortgage Bankers were settled on an individual basis, due to "the uncertainty of maintaining a collective action as [to] the Outside/Retail Mortgage Banker."  (<u>See</u> Jt. Mot. and Mem. for Approval of FLSA Collective Action Settlement in <u>Manning</u>, a true and correct copy of which is attached hereto as Exhibit A.)

      As this prior case makes clear, the requested conditional certification of "all persons employed by the Defendants as loan officers within the last three years" is not only an overly

Philadelphia
Ten Penn Center  | 1801 Market Street  | Suite 2300  | Philadelphia, PA 19103  | 267.338.1300

www.offitkurman.com


WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

broad class certification, but it encompasses a subclass that reached settlement less than a year ago with Defendant The Federal Savings Bank. As Plaintiffs note, the burden is on Plaintiffs to demonstrate "the putative class members are similarly situated." (Letter Mot. at 2 (citing Lewis v. Nat. Financial Sys., Inc., 2007 U.S. Dist. LEXIS 62320, at *6 (E.D.N.Y. 2007).) However, because the Plaintiffs here fail to recognize the issue of subclasses or that one of the subclasses has already reached settlement, Plaintiffs should not be granted leave to seek class certification until Defendants have had an opportunity to depose Plaintiffs and conduct further discovery to determine whether Plaintiffs are seeking a class that incorporates the Direct Mortgage Bankers, who have already settled. To date, Plaintiffs have not been deposed and taken the position that depositions were premature during this stage of discovery.

Second, to the extent Plaintiffs are only seeking to certify the "Outside/Retail Mortgage Bankers", which was the job title held by the named Plaintiffs and the opt-in plaintiffs, Plaintiffs should not have leave to seek class certification at this time. Class certification is not appropriate where it may include exempt employees. "To the extent that any of these employees may be properly classified as exempt, these potential plaintiffs simply are not similarly situated with the named plaintiffs." Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 498 (D.N.J. 2000).

One of the exemptions pursuant to regulations promulgated by the United States Department of Labor is the "outside sales person", which is described as a someone: "(1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." See 29 C.F.R. 541.500. There is no dispute that the Outside/Retail Mortgage Bankers had a primary duty of selling loans. Therefore, the open question is whether these Outside/Retail Mortgage Bankers "customarily and regularly engaged away from the employer's place or places of business in performing" the selling of loans. Such an analysis is fact intensive and specific to each individual. See Scholtisek v. Eldre Corp., 229 F.R.D. 381, 389 (W.D.N.Y. 2005) ("the purported class members' job duties, and any dissimilarities among them, will often be relevant to whether the employees are similarly situated for purpose of the FLSA, insofar as their job duties relate to whether they were correctly classified as exempt from FLSA's overtime requirements.").

Other cases considering outside loan officers, such as the ones here, have recognized that class certification is improper. See, e.g., Wong v. HSBC Mortg. Corp., No. C-07-2446 MMC, 2010 WL 3833952, at *2 (N.D. Cal. Sept. 29, 2010) (in evaluating outside sales exemption, "courts must . . . ask where the individual employees actually spent their time"); Trinh v. JP Morgan Chase & Co., No. 07-CV-1666 W(WMC), 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008) (denying certification due to individualized inquiries necessary to apply outside sales exemption to loan officers); Olivio v. GMAC Mortg. Corp., 374 F. Supp. 2d 545, 550-51 (E.D. Mich. 2004) (same). Until discovery has been completed to determine whether the Plaintiffs and opt-in plaintiffs are similarly situated and not exempt as "outside sales persons", a motion for class certification is premature.



WASHINGTON   | BALTIMORE  | PHILADELPHIA  | WILMINGTON  | VIRGINIA

the perfect legal partner®

Furthermore, in the present case, Defendants have a reasonable belief that the Plaintiffs and opt-in Plaintiffs are exempt.  As noted above, all of them were Outside/Retail Mortgage Bankers, whose job included the sale of mortgages outside of Defendant The Federal Savings Bank's offices.  They were assigned to a Loan Production Office at The Federal Savings Bank, but did not have a designated workstation and were not provided computers, but were required to bring their own devices.  A review of the available work e-mails from those employees show that many of the work e-mails were sent by mobile device by these Plaintiffs, as demonstrated by footers on emails stating "sent from iPhone" or similar language.  Defendants are attempting to determine from what device and location other work emails were being sent from, but have not completed this investigation and, as noted above, the Outside/Retail Mortgage Bankers did not have computers provided by The Federal Savings Bank.  This investigation will likely require information from the Plaintiffs and opt-in Plaintiffs regarding their mobile devices, the computers used for work (laptop versus home desktop), and similar information.

Finally, Plaintiffs rely extensively on the issue of statute of limitations.  However, these concerns are substantially diminished in this case, where a previous settlement was reached with the non-exempt loan officers less than a year ago.  As such, the harm referenced by Plaintiffs of rights being extinguished is not a substantial issue in this present action that would justify the premature determination of class certification.  Defendants should have the opportunity to complete discovery, including the depositions of Plaintiffs and opt-in Plaintiffs, so as to be able to answer the threshold question of whether the putative class members are similarly situated.

Thank you for your consideration of this response.

Respectfully yours,

William Pillsbury

Enclosure

4846-6888-8868, v. 1

Philadelphia
Ten Penn Center  | 1801 Market Street  | Suite 2300  | Philadelphia, PA 19103  | 267.338.1300

www.offitkurman.com

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL MANNING, DARRIN VOTAW, and DEREK GRANT,<br><br>On behalf of themselves and all other persons similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>THE FEDERAL SAVINGS BANK<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Cause of Action No.: 12-cv-2640 JTM/KMH<br>)<br>)<br>)<br>)<br>)<br>) |

## JOINT MOTION AND MEMORANDUM FOR APPROVAL OF FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT

**COME NOW** Plaintiffs Michael Manning, Darrin Votaw, (the "Representative Plaintiffs") individually and on behalf of all opt-in plaintiffs (collectively, the "Opt-In Plaintiffs"), and Plaintiff Derek Grant individually, and Defendant The Federal Savings Bank ("The FSB") (collectively, "the Parties"), and respectfully seek approval of their settlement of the Opt-In Plaintiffs' claims and Derek Grant's individual Settlement Agreement and Release brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

This FLSA collective action settlement ("Settlement") is a product of an arm's-length negotiation between the parties. The Parties respectfully submit that (1) the Settlement resolves a bona fide dispute regarding provisions of the FLSA; (2) its terms are fair and reasonable to all parties concerned; and (3) the Settlement provides for reasonable attorneys' fees. For these reasons, the Court should grant the joint motion and approve the Settlement.

1

10857709.1

## BACKGROUND

Defendant The Federal Savings Bank ("The FSB") is a national bank that is doing business, or at all relevant times, had done business in the State of Kansas. The FSB also does business in various other states providing mortgage loans to customers for real estate. At all relevant times, The FSB has employed (in addition to its other employees) two types of employees, "Direct Mortgage Bankers" and "Outside/Retail Mortgage Bankers," to assist customers in providing financing to purchase homes or refinance existing home loans. FSB paid both its Direct Mortgage Bankers and its Outside/Retail Mortgage Bankers on a commission basis.

### I. COMMENCEMENT OF THE LAWSUIT

On October 1, 2012, Plaintiff, Michael Manning filed his Complaint against Defendant, The FSB. On July 2, 2013, the Plaintiffs Manning, Votaw and Grant filed their Amended Complaint against Defendant The FSB, which is the operative Complaint in this case. Plaintiffs filed their lawsuit against The FSB as a collective action under § 216(b) of the FLSA for alleged violations of the FLSA and as a class action under Fed.R.Civ.P. 23 for alleged violations of the Kansas Wage Payment Act ("KWPA").[1] (Doc. No. 31). Therein, the Plaintiffs alleged that Defendant failed to compensate them, and putative collective action members, for their straight time, including minimum wages, for all hours worked, and/or for overtime work at one-and-one-half times their regular rate of pay. On July 16, 2013, the FSB filed its Answer, denying the material allegations in the Complaint. (Doc. No. 33). At all relevant times, Defendant has contended that it paid the Plaintiffs and putative members of the collective action for all straight time owed, that the Plaintiffs and putative collective action members were instructed not to work

---

[1] As part of the Settlement, and contingent upon the Court's approval of the Parties' Joint Motion to Approve the Settlement, the Representative Plaintiffs have agreed to dismiss their claims under the Kansas Wage Payment Act.

2

in excess of forty hours per week without prior approval, and that Plaintiffs could not demonstrate that they performed work in excess of forty hours per week.

On January 3, 2014, the Plaintiffs filed their Motion for Conditional Certification of Class Claim. (Doc. No. 61, Doc No. 62). Therein, Plaintiffs recognized that subclasses might be necessary as to the Direct Mortgage Bankers and the Outside/Retail Mortgage Bankers, respectively; as to such subclasses, Plaintiffs Manning and Votow would serve as the Representative Plaintiffs for the Direct Mortgage Bankers and Derek Grant would serve as the Representative Plaintiff for the Outside/Retail Mortgage Bankers. (Doc. No. 62, p. 18). As to the prospective need for subclasses, the case entailed the issue of an "outside sales" exemption to minimum wage and overtime rights under the FLSA as to members of the collective action working in the Outside/Retail Mortgage Division because the FSB did not require Outside/Retail Mortgage Bankers to perform their work in a fixed office of the FSB and their primary duty was to generate sales outside of The FSB's office. (*See* Doc. No. 62, pp. 19-21).

In addition to the three Named Plaintiffs, eighteen (18) current and former employees of the FSB completed "Consent to Join" forms which were filed with the Court to effectuate their status as "opt in Plaintiffs" in the case. During relevant times, 17 of those 18 putative class members were employed by The FSB as Direct Mortgage Bankers; one putative class member David Glick, was employed by The FSB as an Outside/Retail Mortgage Banker.

The Parties conducted extensive discovery on the disputed issues. Both Parties respectively propounded and responded to detailed Interrogatories and Requests for Production of Documents. The FSB deposed Plaintiffs Michael Manning and Derek Grant. The Plaintiffs deposed Bradley Berndt, the former director of consumer mortgage banking at The FSB and

3

deposed a corporate representative of the FSB, John Calk, regarding The FSB's compensation policies.

## II. THE CLAIMS AND DEFENSES

The Plaintiffs alleged that The FSB's commission compensation method had the effect of violating the FLSA. More specifically, they contended that the claims asserted in the litigation have merit and that the evidence developed to date in the litigation supports the claims asserted. The Plaintiffs contend that Defendant failed to compensate them and putative collective action members for straight time, including minimum wages, for all hours worked and/or for overtime work at one-and-one-half times their regular rate of pay. Defendant has at all times maintained the position that the claims lack merit. Defendant contends that it paid the Plaintiffs and putative class members for all straight time, that the Plaintiffs and putative class members were instructed not to work in excess of forty hours per week without prior approval, and that they cannot demonstrate that they performed work in excess of forty hours per week.

## III. THE CLASS SETTLEMENT ALLOCATION AND PROCEDURE

Although Defendant denies any wrongdoing, Defendant has decided to resolve the litigation to avoid the uncertainty, risk and expense associated with litigation. Similarly, Counsel for the Plaintiffs recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation through trial and through appeals. Counsel for the Plaintiffs have also taken into account the uncertainty and risks inherent in any litigation, especially complex cases like this Litigation, and they believe that the settlement set forth in this Stipulation confers substantial benefits upon the Settlement Class and each of the Settlement Class Members. Based on their evaluation, counsel for the Representative Plaintiffs has determined that the settlement set forth in The Stipulation of Settlement, which is attached hereto as Exhibit 1 and is discussed

4

10857709.1

below, is in the best interests of the Representative Plaintiffs and the Settlement Class and each of the Settlement Class Members.

The "Settlement Class Members" in the Stipulation of Settlement includes current and former Direct Mortgage Bankers of The FSB, and does not include current and former Outside/Retail Mortgage Bankers of The FSB. As explained below, the uncertainty of maintaining a collective action as the Outside/Retail Mortgage Banker through the "decertification" process, and the effect that such decertification could have on the Outside/Retail Mortgage Bankers, led the Parties, and Plaintiffs' Counsel in particular, to the conclusion that the best option for all putative class members was to settle this case on a class-wide basis on behalf of the Direct Mortgage Bankers, and to settle the claims of both Plaintiff Grant and opt-in Plaintiff Glick, who worked as an Outside/Retail Mortgage Bankers, on an individual basis, without prejudicing the rights of other Outside/Retail Mortgage Bankers.

The Maximum Settlement Amount provided is $375,000. The settlement provides for $4,000 each to Plaintiff Derek Grant and to opt-in Plaintiff David Glick for the settlement of their individual claims, respectively. The settlement provides for $2,000 each to Representative Plaintiffs Michael Manning and Darrin Votaw, as incentive pay for their efforts to benefit the Settlement Class Members, The FSB's other Direct Mortgage Bankers. Lastly, the settlement provides for $112,500 for attorneys fees and costs. Based upon the Maximum Settlement Amount and the deductions from it described above, the maximum amount of the settlement available to all remaining Settlement Class Members is $250,500.

A. Allocation

Settlement Class Members who timely return a Request to Join Action and Release of Claims will receive a payment representing their distributive share of the Maximum Settlement

5

10857709.1

Amount after the deduction of approved attorneys' fees, costs, and representative plaintiffs' incentive payments. The amount awarded to each Settlement Class Member is calculated by determining each Settlement Class Member's total alleged damages and dividing that amount by the total alleged damages for all Settlement Class Members. The resulting number, expressed as a percentage for each Settlement Class Member, is then multiplied by the maximum amount of the settlement available to all Settlement Class Members ($250,500) to determine each Settlement Class Member's award.

To determine each individual's total alleged damages, either alleged overtime damages or minimum wage damages were calculated for each work week for each Settlement Class Member. By using this method, each individual's award is based on both number of weeks worked and compensation. Depending upon the total compensation for each week, provided by Defendant for each Settlement Class Member, the Settlement Class Member would have either overtime damages or minimum wage damages, but never both. Partial workweeks or weeks containing holidays were excluded. The calculation assumed (5) hours of overtime for each week worked during the class period. For each week for which overtime was due, a "regular hourly rate" was calculated by dividing the total compensation by 45 hours (40 hours plus 5 hours of overtime). Because each individual would be eligible for half this hourly rate in an overtime calculation, the resulting "regular hourly rate" is divided by 2 and then multiplied by 5 hours of overtime. For each week for which the employee was only due minimum wage adjustment, total damages were also calculated based on a 45 hour workweek. In this calculation, the damages are the difference between what he or she should have received for minimum wage, less the actual amount of compensation. Pursuant to this allocation procedure, Plaintiff's counsel has prepared a

6

spreadsheet detailing the settlement amounts due to each eligible Settlement Class Member, which is attached hereto as Exhibit 2.

Under the terms of the Settlement, half of each payment made to Settlement Class Members shall be allocated as payment in lieu of wages and shall be less applicable tax withholdings. The Federal Savings Bank will make all required tax deposits related to such payments. The other half of each payment made to Settlement Class Members shall be allocated as payment in lieu of liquidated damages and shall not be treated as wages for tax purposes, but rather will be income reported on IRS form 1099 if one is required by applicable law.

The Settlement also provides for "incentive pay" in the amount of $2,000 each to Michael Manning and Darrin Votow for their services in obtaining the substantial relief the Settlement Class Members will enjoy pursuant to the settlement.

Lastly, the settlement provides for $112,500.00 as costs and attorneys' fees to class counsel. As explained in the Plaintiffs' Motion for Approval of Attorneys' Fees filed contemporaneously herewith, this includes deposition transcripts, travel expenses and filing fees which amount to $4,643.96 in costs to prosecute this action on behalf of the class. Thus, of the $112,500.00 to class counsel, $107,856.04 constitutes payment for attorneys' fees. As detailed in Plaintiffs' Motion for Approval of Attorneys' fees, the portion of the settlement payable to class counsel as attorneys' fees is substantially similar to the fees calculated on a lodestar basis that Plaintiffs' counsel would have otherwise claimed for work performed in the case.

**B. Notice and Administration**

Pursuant to the Settlement Agreement, Defendant will cause to be mailed, at its expense and within twenty business days of the entry of the Order approving this settlement, the Notice of Collective Action and Release of Claims and the Request to Join Action and Release of Claims

7

to all individuals eligible to be Settlement Class Members: advising them that the lawsuit has been settled; identifying the Settlement Class Member's settlement allocation; and outlining the wage and hour claims each Settlement Class Member will release in exchange for the Settlement. The Proposed Collective Action Settlement Notice and Request to Join Action and Release of All Claims are attached hereto as Exhibits 3 and 4. This notice constitutes the best notice practicable under the circumstances as it includes individual notice to all persons eligible to be Settlement Class Members who can be identified with reasonable effort.

Pursuant to the Settlement Agreement, to become a Settlement Class Member, any person eligible to be in the Settlement Class shall execute and return to the Claims Administrator the Request to Join Action and Release of All Claims and the Claim for Settlement Payment no later than forty days after the date of mailing of the Notice and Request to Join Action and Release of Claims. All fees and expenses incurred by the Claims Administrator shall be paid by Defendant, at its own expense, exclusive of the Maximum Settlement Amount.

IV. **THE TERMS OF THE SETTLEMENT FOR THE INDIVIDUAL CLAIMS OF DEREK GRANT AND DAVID GLICK.**

The settlement of the individual claims of Derek Grant and David Glick provides for payment to each of them in the amount of $4,000. The Settlement Agreement and Release of their claims, attached hereto as Exhibits 5 and 6, operates separately and distinctly from the "Maximum Settlement Amount" and reflects their individual claims, respectively, as employees in the Outside Mortgage/Retail Sales Division. Only those persons who were employed by The FSB in the position of Direct Mortgage Banker are "Settlement Class Members" eligible to make a claim from the Maximum Settlement Amount. Plaintiff Grant and opt-in Plaintiff Glick were employed by The FSB in the Outside Mortgage/Retail Sales Division. Thus, they are not eligible

members of the "Settlement Class" within the meaning of The Stipulation of Settlement Agreement and Release.

Plaintiffs' counsel recognizes that The FSB's Mortgage Bankers in the Outside Mortgage/Retail Sales Division might be found to be exempt "outside sales" employees within the meaning of the FLSA. Mortgage bankers employed in the Outside Mortgage/Retail Sales Division were given discretion by The FSB to perform "outside sales" work. *See* 29 C.F.R. 541.500(a) (explaining that the outside sales exemption to minimum wage and overtime rights applies to employees whose "primary duty" is "making sales" and who are "customarily and regularly engaged away from the employer's place of business in performing such primary duty"). Outside Mortgage/Retail Sales employees were not required to maintain an office at The FSB's place of business and were expected to solicit sales from customers at the customer's home or choosing.

Plaintiff Grant was employed by the FSB from approximately March 2012 to August 2012. Plaintiff Grant testified at his deposition that he himself always engaged in sales at a fixed site- either his home or an office of The FSB- and never engaged in selling at a customer's home or office. Opt-in Plaintiff Glick was employed by the FSB from approximately May 2012 to July 2013. Unlike Plaintiff Grant, opt-in Plaintiff Glick has not been deposed. If the litigation of the case proceeded without this settlement, opt-in Plaintiff Glick, and/or any other future opt-in Plaintiffs who worked in the Outside/Retail Sales Division, would need to overcome the prospect of The FSB's "outside sales" exemption defense to their FLSA claims. *Compare Dixon v. Prospect Mortgage, LLC,* ---F. Supp. 2d---, 2014 W.L. 130942 (E.D. Va., Jan 14, 2014) (granting summary judgment to defendant that mortgage loan officer was subject to "outside sales" exemption of FLSA), *with Arnold v. Reliant Bank,* 932 F. Supp. 2d 840, 855-57 (M.D.

9

Tenn. 2013) (denying summary judgment to defendant as to whether mortgage loan officer was subject to "outside sales" exemption of FLSA).

Moreover, if Plaintiffs obtained conditional certification as to a collective action involving all of The FSB's Outside/Retail Sales Bankers to participate as opt-in Plaintiffs, Plaintiffs would nonetheless face the prospect of a subsequent motion for decertification of that sub-class as to Defendant's position concerning individualized defenses as to the "outside sales" exemption. *See Wong v. HSBC Mortgage Corp.,* 2010 W.L. 3833952 (N.D. Cal., Sept. 29, 2010).

Plaintiff Grant and opt-in Plaintiff Glick have both agreed to dismiss with prejudice their claims and causes of action against The FSB. The dismissal of their claims, however, is contingent upon the Court's approval of the class settlement as reflected in the Stipulation of Settlement Agreement and Release. Accordingly, the parties agree that Grant and Glick will dismiss with prejudice their claims against The FSB after entry of an Order by the Court approving the class settlement as reflected in the stipulation.

## LEGAL ANALYSIS

### I. FLSA COLLECTIVE ACTION CERTIFICATION

"Where the parties settle FLSA collective action claims before the court has made a final collective action ruling, the court must make some final class certification finding before it can approve the settlement." *Grove v. ZW Tech, Inc.*, 2012 WL 4867226, at *2 (D. Kan. Oct. 15, 2012). When making the final determination regarding certification, courts consider "(1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id.* (citation omitted).

10857709.1

Here, the Settlement Class includes all persons who were employed by The FSB in the position of Direct Mortgage Banker between April 1, 2011 and December 31, 2012[2] and who will execute a Request to Join Action and Release of Claims. The Representative Plaintiffs assert that they are similarly situated to all other Direct Mortgage Banker employees of The FSB. First, all Settlement Class Members are individuals who were employed as Direct Mortgage Bankers by The FSB. Second, each of the Settlement Class Members were paid on a commission basis. Plaintiffs contend that each Settlement Class Member received such commission-based compensation without regard to hours worked for purposes of the asserted minimum wage and overtime rights of Direct Mortgage Bankers. All of FSB's Direct Mortgage Bankers performed similar job duties of soliciting and closing mortgage loans for customers who are purchasing or refinancing homes. All Direct Mortgage Bankers were subject to the policies and practices causing them to all be similarly impacted by FSB's pay policies regarding the alleged FLSA violations. Plaintiffs assert that Defendant failed to pay its Direct Mortgage Bankers minimum wages and overtime premiums for all hours worked in excess of forty hours during workweeks pursuant to such policies and practices.

Defendant asserts that it paid the Representative Plaintiffs all straight time, that the Representative Plaintiffs were instructed not to work in excess of forty hours per week without prior approval, and that they cannot demonstrate that they performed work in excess of forty hours per week. Defendant believes it is in compliance with the FLSA and disputes that Representative Plaintiffs can establish they worked hours in excess of forty hours per week. For

---

[2] The FSB began residential mortgage lending operations in April 2011. The FSB substantially changed its method of compensating Direct Mortgage Bankers effective January 1, 2013.

11

10857709.1

purposes of the settlement, The FSB will not contest the Representative Plaintiffs' position that The FSB's defenses would apply similarly to all Settlement Class Members.

## II. THE PROPOSED SETTLEMENT APPROPRIATELY RESOLVES THE PARTIES' CLAIMS AND DEFENSES

### A. Standard for Approval of the Settlement of FLSA Claims.

The FLSA requires that proposed settlements to recover back pay wages be approved by the district court. *See Fulton v. TLC Lawn Care, Inc.*, 2012 WL 1788140, at *3 (D. Kan. May 17, 2012) (citation omitted); *see also Lynn's Food Stores v. United States*, 679 F.2d at 1355. The court may approve a "fair and reasonable" compromise of "issues actually in dispute" in order to "promote the policy of encouraging settlement of litigation." *Fulton*, 2012 WL 1788140, at *3 (citations omitted).

In evaluating whether a FLSA settlement is a fair and reasonable resolution of a bona fide dispute, this Court has applied the following factors pursuant to Rule 23(e) of the Federal Rules of Civil Procedure: "(1) whether the proposed settlement was fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigations, and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* (citations omitted). This Court has also considered the following "contextual factors:" "(1) defendant's business; (2) the type of work performed by plaintiffs; (3) the facts underlying plaintiffs' reasons for justifying their claims; (4) defendant's reasons for disputing plaintiffs' claims; (5) the relative strength and weaknesses of plaintiffs' claims; (6) the relative strength and weaknesses of defendant's defenses; (7) whether the parties dispute the computation of wages owed; (8) each party's estimate of the number of hours worked

12

and the applicable wage; and (9) the maximum amount of recovery to which plaintiffs claim they would be entitled if they successfully proved their claims." *Id.* at *4 (citations omitted).

### B. A *Bona Fide* Dispute Between The Parties Exists Over The FLSA's Provisions

In order to merit court approval, the settlement must resolve a *bona fide* dispute over FLSA provisions. A *bona fide* dispute clearly exists in this case.

### C. The Proposed Settlement is Fair, Reasonable, and Adequate.

Pursuant to the agreed-upon settlement class members will receive their portion of the Maximum Settlement Amount based upon their hours, individual regular rate and length of employment. The FSB has at all times contended, and continues to contend, that absent settlement, class members would be entitled to no, or virtually no, compensation in addition to the amounts they routinely received as commission.

The proposed settlement is fair, just and reasonable. First, the settlement was reached after the Parties engaged in negotiations spanning many months.

Second, serious questions of law and fact exist which placed the ultimate outcome of the litigation in doubt. Whether the Direct Mortgage Bankers were exempt from claiming overtime, and, in the alternative, whether the Direct Mortgage Bankers were estopped from claiming overtime since The FSB claims that it instructed employees not to work over forty hours in one week were serious questions that had both parties question their respective prospects if the case were to proceed to trial. Similarly, the Parties contemplated the number of overtime hours worked by the Direct Mortgage Bankers each week, as no time records were kept to accurately reflect the number of overtime hours worked.

On The FSB's side of the risk coin, the FLSA is a mandatory fee-shifting statute. Should the case proceed to trial, the defendant could potentially face the prospect of paying a large

13

award of attorneys' fees and cost to class counsel. *See* Exhibit 7 attached hereto, *Garcia v. Tyson Foods, Inc.,* Case No. 2:06-cv-02198-JTM (D. Kan., March 17, 2011) (Doc. No. 1073, requesting a loadstar fee award of $3,236,000.25).

Given the Parties' respective risks in this case and the range of potential outcomes, the proposed settlement represents a reasonable compromise of the Parties to avoid uncertainty. The settlement at issue far outweighs the Parties' respective risks of proceeding to dispositive motions or trial in this case. The settlement will provide substantial relief to each member of the FLSA class.

Finally, the Parties agree that the terms of the settlement are fair. The settlement fund pays to each of the class members an amount based on the regular rate and length of his or her employment in a Direct Mortgage Banker position with The FSB. Plaintiffs' Counsel has reviewed relevant records of The FSB to determine such individual payments to class members, utilizing a detailed spreadsheet.

### III. PLAINTIFFS' COUNSEL'S FEES AND COSTS ARE REASONABLE AND THE REQUESTED INCENTIVE PAYMENTS SHOULD BE AWARDED

**A. The Court Should Award Plaintiffs' Counsels' Requested Fees and Costs**

Plaintiffs' Counsel will file a separate motion for Court approval of attorneys' fees and costs in an amount not to exceed $112,500, consistent with the Agreement of the Parties. The fee award is intended to compensate Plaintiffs' Counsel for all work already performed in connection with this lawsuit, including but not limited to, all work remaining to be performed in executing the Settlement Agreement, securing Court approval of the Settlement Agreement, administering the Settlement Agreement, ensuring the Settlement Agreement is fairly administered, and implementing and obtaining dismissal of the lawsuit. Defendant will issue Plaintiffs' Counsel IRS Form 1099 for the attorneys' fees and costs that the Court awards.

14

### B. The Court Should Award The Incentive Payments Requested For The Named Plaintiffs.

Under the Stipulation of Settlement, Named Plaintiffs Michael Manning and Darrin Votaw will receive a modest "incentive payment" of $2,000.00 each for being the Class Representatives in this action which resulted in the substantial proposed relief to class members. The two Named Plaintiffs expended considerable time and effort and worked with Plaintiffs' Counsel throughout this litigation in pursuing these claims on behalf of class members, including but is not limited to: discussing with Plaintiffs' Counsel various factual issues applicable to the complex legal landscape in the case; responding to written discovery and document production; reviewing discovery responses of The FSB; and, in Representative Plaintiff Manning's case, preparing for and attending his deposition. The two Representative Plaintiffs took the initiative to file and pursue this matter on behalf of the class of employees. The amount sought for this incentive payment is fair and reasonable and should be approved by this Court. *See* Exhibits 8 and 9 attached hereto, Motion and Order in *McDonald v. Kellogg Co.,* Case No. 2:08-cv-02473 (D. Kan.) (Doc. No. 298, p. 12; Doc. No. 302, p. 2) (approving incentive pay in the amount of $3,500.00 to each named plaintiff).

### CONCLUSION

**WHEREFORE**, the Parties jointly and respectfully request that this Court grant the Parties' Joint Motion to Approve the Settlement and enter in an Order substantially similar to Exhibit 3 to the Stipulation of Settlement that (1) makes a final collective action certification finding for purposes of settlement; (2) appoints Plaintiffs Manning and Votaw as Representative Plaintiffs and approves the Representative Plaintiffs' incentive awards; and (3) preliminarily approves the Settlement as set forth in the Stipulation of Settlement Agreement and Release; and

15

10857709.1

the Parties respectfully request that this Court approve the individual Settlement Agreement and Release of Derek Grant and David Glick.

Respectfully submitted this 14th day of May, 2014, by:

/s/ Brad K. Kavanaugh
BRADY & ASSOCIATES
Michael F. Brady       KS #18630
Brad K. Kavanaugh      KS #23215
Mark A. Kistler        KS #17171
Sara T. Ballew         KS #25787
10901 Lowell Ave., Suite 280
Overland Park, Kansas 66210
Telephone (913) 696-0925
Facsimile (913) 696-0468

ATTORNEYS FOR PLAINTIFFS' CLASS REPRESENTATIVES

/s/ Patricia A. Konopka
STINSON LEONARD STREET LLP
Patricia A. Konopka    KS #17012
Christina D. Arnone    KS #24522
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
Telephone (816) 842-8600
Facsimile (816) 691-3495

ATTORNEYS FOR DEFENDANT
THE FEDERAL SAVINGS BANK

10857709.1