UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MICHAEL MCDERMOTT, and DOUGLAS
FINNEGAN, Individually, and on behalf of all
others similarly situated,

               Plaintiffs,

  -against-

THE FEDERAL SAVINGS BANK, JOHN T.
CALK, AND STEVE CALK,

               Defendants.
----------------------------------------------------------------X

APPEARANCES:

    Justin Reilly
    Neil H. Greenberg
    Neil H. Greenberg & Associates, P.C.
    900 Merchants Concourse, Suite 314
    Westbury, New York 11590

    Erik Harald Langeland
    Erik H. Langeland, P.C.
    500 Fifth Avenue, Suite 1610
    New York, NY 10110

    James B. Zouras
    Ryan F. Stephan
    Teresa Becvar
    Stephan Zouras, LLP
    205 N. Michigan Avenue, Suite 2560
    Chicago, IL 60601
        *Attorneys for Plaintiffs*

    William H. Pillsbury
    Ari Karen
    April Rancier
    Offit Kurman
    1801 Market Street, Suite 2300
    Philadelphia, PA 19103
        *Attorneys for Defendants*

For Online Publication Only

**MEMORANDUM & ORDER**
14-CV-6657 (JMA) (GRB)

**FILED**
**CLERK**

4/18/2018 2:19 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

On November 12, 2014, plaintiff Michael McDermott commenced this putative collective action against his former employer, defendant Federal Savings Bank ("FSB") and two of FSB's officers, defendants John T. Calk and Steve Calk (collectively, "Defendants"), alleging failure to pay minimum and overtime wages in willful violation of the Fair Labor Standards Act ("FLSA"), as well as a parallel claim under New York Labor Law. On December 18, 2014, Douglas Finnegan, another former employee of FSB joined this action and filed an amended complaint on behalf of himself, McDermott and all others similarly situated. On September 21, 2015, plaintiffs moved for conditional certification of a collective action consisting of 608 "outside sales" loan officers who were employed by FSB nationwide from November 12, 2011 to November 12, 2014 and to facilitate notice of this suit to such individuals.[1]

As of the date of plaintiffs' motion, ten additional individuals opted in to the proposed collective action. In support of their motion, plaintiffs submitted declarations from eight former loan officers employed by Defendants. Prior to briefing the motion, Defendants deposed at least nine plaintiffs and opt-ins and submitted the transcripts of these depositions in support of their opposition, along with a declaration by defendant John T. Calk.

The motion for conditional certification was referred to Magistrate Judge Brown on June 8, 2015. On May 20, 2016, Judge Brown granted Plaintiffs' motion to conditionally certify a nationwide collective action, approving distribution of notice to "all outside sales loan officers who performed their primary duties for the Defendants at the Defendants' offices" from November 12, 2011 to the present. (Order Dated May 20, 2016 at 12–13, ECF No. 80; Pls.' Cert. Mot., Ex L, ECF No. 49-12.)

---

[1] Plaintiffs originally requested conditional certification of a class including all loan officers who worked for FSB during the relevant time period, but later limited the class to "outside sales" loan officers only. (See Pls.' Cert. Reply Br. 1-2, ECF No. 77.)

Presently before the Court is a motion by Defendants pursuant to Federal Rule of Civil Procedure 72(a) to set aside the May 20, 2016 Order. For the reasons set forth below, the Court finds that conditional certification is not warranted as to a nationwide collective action, but that collective certification is appropriate for a more limited group of employees.

## I. BACKGROUND

### A. The Parties

FSB is a federally chartered bank with offices throughout the United States. Plaintiffs are all former outside loan officers ("LOs") whose primary duty was to "originate mortgage loans" for FSB. (See Am. Comp. ¶ 19.) FSB classifies all LOs as exempt employees pursuant to the outside sales exemption and paid all LOs exclusively on a commission basis. (See John T. Calk Decl., ECF No. 51-1.)

LOs were required to attend a weekly meeting at one of FSB's offices and received some training in how to obtain leads and clients. (Id.) Plaintiffs contend that the LOs "spend the majority of each and every day soliciting sales by using telephones and computers at fixed work locations." (Pls.' Cert. Reply Br. at 4, ECF No. 52.)

When plaintiffs filed their conditional certification motion, there were twelve plaintiffs and opt-ins. Nine out of those twelve employees worked under a Marketing Service Agreement ("MSA") between FSB and Douglas Elliman, a real estate broker with multiple locations in New York. Those LOs (the "MSA LOs") had their own desks at Douglas Elliman locations and frequently worked from those offices, cultivating relationships with realtors and their clients for the purpose of generating mortgage loan sales.[2] (See Pls.' Cert. Mot., ECF No. 49, Ex. C (McDermott Decl.) ¶ 16; Ex. E (Surgenor Decl.) ¶ 14; Ex. F (Mack Decl.) ¶ 14; Ex. G (Pashinsky

---

[2] Defendants represent, and plaintiffs' evidence supports, that only the LOs in New York operated pursuant to an MSA. (See Defs.' Br. at 3-4; McDermott Decl. ¶ 21.)

Decl.) ¶ 14; Ex. H (Chen Decl.) ¶ 14; Ex. I (Koerner Decl.) ¶ 14; see also Ex. B, Pls.' Supp. Response to Interrogatory at 6.)

Some of the MSA LOs originally worked for Wells Fargo, which had a similar relationship with Douglas Elliman and which classified those LOs as non-exempt. (See McDermott Decl. ¶ 19; Surgenor Decl. ¶ 17; Chen Decl. ¶ 17; Koerner Decl. ¶ 17.) At some point, FSB "basically stepped into the shoes of Wells Fargo." (Id.) Once those LOs became employees of FSB, they were reclassified as exempt. (See McDermott Decl. ¶ 20; Surgenor Decl. ¶ 18; Chen Decl. ¶ 18; Koerner Decl. ¶ 18.)

Since plaintiffs' original motion for conditional certification was filed, nine additional plaintiffs have opted in. (See ECF Nos. 61, 63, 78, 82, 84, 85, 87-89.)

## B. The Outside Sales Exemption

"The FLSA § 207(a)(1) . . . require[s] qualifying employers to compensate employees for hours worked in excess of forty hours per work week at a rate not less than one-and-one-half times the regular rate of pay subject to certain exemptions." Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d 343, 345 (E.D.N.Y. 2015); see also 29 U.S.C. §§ 206(a)(1), § 207(a)(1). One such exemption covers employees who are employed "in the capacity of outside salesmen." See 29 U.S.C. § 213(a)(1). The applicable Department of Labor (DOL) regulation defines "outside salesmen" as any employee: "(1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the Act; or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a).

In this case, it appears undisputed that the LOs all satisfy the first prong of this test in that their primary duty involves originating mortgage loans. The applicability of the outside salesmen

4

exemption to the LOs appears to turn on whether the LOs are "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a).

## II. DISCUSSION

In this motion, Defendants challenge the May 20, 2016 Order (the "Order"), arguing that Judge Brown failed to consider plaintiffs' deposition testimony, which is relevant to plaintiffs' claim that all putative class members are similarly situated. Defendants maintain that based on the evidence in the record at the time of the Order, plaintiffs failed to make even a modest showing that they are "similarly situated with respect to their job requirements," which is the key question in cases concerning the outside sales exemption. Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010).

### A. Rule 72(a)

Pursuant to Federal Rule of Civil Procedure 72(a), a district court may modify or set aside a non-dispositive order of a magistrate judge only where it finds that the order is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Under the clearly erroneous standard, a magistrate judge's findings "should not be rejected merely because the court would have decided the matter differently. Rather, the district court must affirm the decision of the magistrate judge unless the district court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Ahmed, 103 F. Supp. 3d at 350 (quoting Pall Corp. v. Entegris, Inc., 655 F. Supp. 2d 169, 172 (E.D.N.Y. 2008)). Similarly, under the "contrary to law" standard of review, a district court may reverse a finding only if it finds that the magistrate failed to apply or misapplied relevant statutes, case law or rules of procedure. Id. (quoting Garcia v. Benjamin Grp. Enter. Inc., 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011)) (internal quotation marks omitted).

5

## B. Standard Conditional Certification of a Collective Action

Under the FLSA, plaintiffs may seek certification as a collective action, whereby the plaintiffs may sue on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216. In a collective action, plaintiffs must "affirmatively 'opt in' to the be part of the class and to be bound by any judgment." Myers, 624 F.3d at 542.

"Although they are not required to do so by FLSA, district courts have discretion, in appropriate cases, to implement [§ 216(b) ] . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Myers, 624 F.3d at 554 (quoting Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)) (internal quotation marks omitted) (alteration in original).

The Second Circuit has endorsed a two-step approach in determining when certification is appropriate. At step one, the court will conditionally certify the collective action and approve the distribution of notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs. Conditional certification requires "plaintiffs to make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Myers, 624 F.3d at 555 (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims." Pippins v. KPMG LLP, No. 11-CV-0377, 2012 WL 19379, at *6 (S.D.N.Y. Jan. 3, 2012).

At step two, "which typically occurs after the completion of discovery, the court determines, on a fuller record," whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs and whether the collective action can go forward. Ahmed, 103 F. Supp. 3d at 347 (citation and internal quotation marks omitted). If the court determines at this stage that all

plaintiffs are not similarly situated, it will then de-certify the class and dismiss the opt-in plaintiffs' claims without prejudice. Id.

To succeed at the conditional certification stage and to show that potential opt-in plaintiffs are similarly situated, plaintiffs must demonstrate a "factual nexus" that binds all employees together as victims of an alleged common unlawful practice. Martin v. Sprint/united Mgmt. Co., No. 15-CV-5237, 2016 WL 30334, at *5 (S.D.N.Y. Jan. 4, 2016). "While the burden on the plaintiff at the conditional certification stage is modest, 'it is not non-existent.'" Jenkins v. TJX Companies Inc., 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012) (quoting Khan v. Airport Mgmt. Servs., LLC, No. 10–CV–7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011)); see also Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) ("In presenting evidence on the appropriateness of granting collective action status, the plaintiff's burden may be very limited, and require only a modest factual showing, but the burden is not non-existent and the factual showing, even if modest, must still be based on some substance.")

In a misclassification case, the plaintiffs must show that they are similarly situated with respect to the exemption at issue. See Myers, 624 F.3d at 555 (explaining that "in a FLSA exemption case, plaintiffs [can meet the burden for conditional certification] by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme" (quoting Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008)); Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797, 801 (S.D.N.Y. 2012) (stating in a case involving the managerial exemption, that plaintiff must "show he is similarly situated to the employees he proposes to include in the collective action with respect to his claim that he performed non-exempt duties"), adopted by, 2012 WL 2588771 (S.D.N.Y. July 2, 2012).

**C. Analysis**

In the Order, Judge Brown found that plaintiffs made a sufficient showing that potential opt-plaintiffs are similarly situated because plaintiffs' declarations "demonstrate that they have similar job duties: 'to call leads, collect and input client information into defendants' database, offer loan programs, and sell loans.'" (Order at 8 (quoting Pls.' Cert. Mot. at 3, ECF No. 48).) Judge Brown identified FSB's "policy to pay all of its [outside] loan originators, regardless of location, on a commission only basis" as the nationwide policy to which all plaintiffs were victims. Id. While Judge Brown acknowledged that FSB's classification of all of its LOs as exempt is insufficient to demonstrate that they are similarly situated for the purposes of § 216, (see Order at 9), he ultimately found that conditional certification was appropriate because "FSB cannot suggest that the jobs varied because it classified each outside loan officer identically without undertaking any individualized analysis." (Id.) In concluding that nationwide conditional certification for inside loan officers was appropriate, Judge Brown also relied on FSB's reclassification decision as well as FSB's requirement that all LOs attend weekly meetings and that they received similar training, which, according to Judge Brown, suggested that FSB "exercised centralized control, and enforced consistent policies." (Id. at 10.) With respect to Defendants' arguments concerning its contrary evidence, including plaintiffs' deposition testimony, Judge Brown concluded that such arguments were premature at the conditional certification stage and that such issues should be addressed at stage two. (See Order at 11 n. 5.)

The Court finds that plaintiffs have not met their burden in demonstrating that all FSB LOs are similarly situated such that conditional certification of a nationwide class is appropriate. Plaintiffs' declarations and other evidence are insufficient to demonstrate that they and the other LOs across the nation "were victims of a common policy or plan that violated the law." Ahmed, 103 F. Supp. 3d at 346 (internal quotation marks and citation omitted). Additionally, Defendants

8

provided evidence in the form of plaintiffs' own deposition testimony that further weighs against conditional certification of a nationwide class.

### 2. Plaintiffs' Declarations and Other Evidence

In their motion for conditional certification, plaintiffs argued that they are similarly situated because they all have the same primary duty, "selling home loans," and they "had the same pay plan" in that they were all paid only on a commission basis. (See Pls.' Cert. Mot. at 9.) Although plaintiffs argued that "they are victims of Defendants' common policy or plan that violates the FLSA," (id. at 10), they failed to identify any such policy other than their classification as exempt, which is insufficient to show that they are similarly situated. Brown v. Barnes & Noble, Inc., 252 F. Supp. 3d 255, 262 (S.D.N.Y. 2017).

Additionally, plaintiffs' evidence failed to address whether they are similarly situated with respect to the outside salesmen exemption. In support of their motion for conditional certification, plaintiffs submitted eight declarations. Four of these declarations included the statement "I spent most of my workweek working out of [FSB's] office locations and working from home." (See Pls.' Cert. Mot., Ex. E (Surgenor Decl.) ¶ 13; Ex. F (Mack Decl.) at ¶ 13; Ex. H (Chen Decl.) ¶13; Ex. I (Koerner Decl.) ¶13.) Two others stated, "I spent the majority of my workweek working out of [FSB's] office." (See Pls.' Cert. Mot., Ex. D (Finnegan Decl.) at ¶ 4; Ex. J (Labak Decl.) ¶ 4.) Another declaration stated, "I spent a lot of my workweek working out of [FSB's] offices and working from home." (See Pls.' Cert. Mot., Ex. G, (Pashinsky Decl.) ¶ 13.) However, the declarations fail to address the extent to which employees were "engaged away from the employer's place or places of business in performing [their] primary duty," which is the crux of this case. 29 C.F.R. § 541.500. At best, plaintiffs' declarations imply that they spent some percentage of their time—potentially ranging from 0 to 49%—"engaged away from the employer's

9

place or places of business in performing [their] primary duty." This is insufficient to show that they are similarly situated for purposes of conditional certification.

Even when plaintiffs' declarations are considered in light of plaintiffs' other evidence—FSB's blanket classification decision, reclassification of the Wells Fargo LOs, weekly meetings and required trainings—plaintiff fail to make the necessary "'modest factual showing'" that they and the putative nationwide group of LOs "'together were victims of a common policy or plan that violated the law.'"[3] Myers, 624 F.3d at 555. Moreover, as explained below, the Court's denial of nationwide conditional certification is further supported by the plaintiffs' deposition testimony.

Based on the deficiencies in plaintiffs' proof, it is a close question whether plaintiffs' request for conditional certification should be denied in its entirety. However, as explained below, the Court finds that the MSA LOs are sufficiently similar such that conditional certification is appropriate for that more limited class.

### 2. Plaintiffs' Deposition Testimony

Plaintiffs ask this Court to deny Defendants' appeal, but instead of responding to the arguments articulated in Defendants' moving brief concerning plaintiffs' deposition testimony, plaintiffs merely rely on the notion that "a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." (Pls.' Appeal Br. at 5 (quoting Cunningham v. Eke. Data Sys. Corp., 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)).

While it is true that the Court does not decide the merits at this stage, the Court is not required to turn a blind eye to evidence in the record that is relevant to the conditional certification

---

[3] A blanket decision to reclassify employees is not sufficient to establish that potential plaintiffs were victims of a common policy that violated the law. See Brown, 252 F. Supp. 3d at 263 ("For the same reason why courts will not automatically certify a collective action simply because a group of employees are classified as exempt, Defendant's reclassification of the CM position also is insufficient to justify conditional certification absent other evidence establishing that Plaintiffs and the potential class are similarly situated."). Moreover, the reclassification decision here only covered a subset of the putative class.

determination. See Korenblum v. Citigroup, Inc., 195 F. Supp. 3d 475, 480 ("although a court does not adjudicate the merits of a claim at the first stage, the elements of, and defenses to, the claim inform the analysis of whether employees are similarly situated").

Here, where discovery has been conducted on the issue of conditional certification, the Court should consider all evidence relevant to that determination. C.f., Korenblum, 195 F. Supp. 3d at 482 ("the Court will look beyond the pleadings and affidavits submitted by Plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding 'that the body of evidence is necessarily incomplete'") (quoting Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011)); Cunningham, 754 F. Supp. 2d at 647 ("[T]his Court will apply the more lenient first-stage test, although it will consider the evidence obtained in discovery and submitted by both parties in that analysis.") This is especially true when plaintiffs' declarations fail to include critical facts relevant to the exemption analysis.

Plaintiffs' own testimony reveals a key difference between the MSA LOs and the LOs who did not operate pursuant to an MSA.[4] Nine out of twelve plaintiffs who were either deposed or submitted declarations were MSA LOs who worked in New York and operated pursuant to an MSA with Douglas Elliman. The MSA relationship inherently affects the way in which LOs obtain clients and make sales. Plaintiffs' testimony demonstrates that the presence of an MSA significantly reduces the need to solicit sales though other channels, including from outside their office. Indeed, three MSA LOs testified that they received 90-100% of their business from Douglas Elliman and their only other source of referrals were family and friends. (See Surgenor Dep. 23:10-22, Ex. C; McDermott Dep., 70:3-5, Ex. D; Mack Dep. 40:2-9, Ex. E.) Another stated

---

[4] Defendants represent that only "one New York-based team in the entire company" operates pursuant to an MSA. (Def.'s Br. at 3-4.)

11

that 25% of his business was derived from FSB's relationship with Douglas Elliman. (See Reimer Dep. 8:7-13, Ex. F.)

On the other hand, non-MSA LOs must generate more sales independently. Glenn Mack testified, based on his experience, that without the MSA relationship with Douglas Elliman, he would be forced to "pound the streets," meaning "[g]o from real estate office to real estate office, visit attorneys [to seek referrals]." (See Mack Dep. 49:3-17.) Michael Labak, who does not operate pursuant to an MSA said that 100% of his loan sales were self-generated and that he often met with referral sources outside the office, attended networking events, open houses and closings to generate sales. (See Labak Dep. 12:29-13:1; 83:24-84:21, Ex. J.)

Not only does common sense dictate that LOs working without an MSA relationship would likely have different work schedules and would be out of the office more frequently than LOs operating pursuant to an MSA, but plaintiffs' own testimony supports this notion as well. There is nothing in the record to suggest that non-MSA LOs were provided with a similar consistent source of referrals. Accordingly, the non-MSA LOs apparently had to rely on other sources to generate sales (including making phone calls in the office and attending events outside in the office). Nor is there any evidence in the record to suggest that the non-MSA LOs were similarly situated to each other with respect to how they obtained leads or the amount of time they were "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a). Moreover, as explained earlier, plaintiffs have not pointed to any overarching policy relevant to this requirement that would warrant conditional certification of a nationwide collective action.

In light of the above, plaintiffs have failed to show that all LOs are similarly situated. They have merely shown that all LOs' primary duty was to sell loans, that they spent a majority of their time in the office or at home, and that they were all paid on a commission basis, which as discussed

earlier, is not enough even under the "modest showing" standard, to grant conditional certification. See Brown, 252 F. Supp. 3d at 262. Accordingly, conditional certification of a nationwide class of over 600 employees is not appropriate.

However, the Court finds that plaintiffs have established that a sufficient factual nexus exists amongst the LOs who operated pursuant to the Douglas Elliman MSA given the way in which the MSA relationship appears to have impacted the LOs' duties and work schedules. Accordingly, the Court will conditionally certify a collective action consisting of such individuals and authorize notice to those potential opt-ins.

## III. CONCLUSION

For the reasons set forth above, the May 20, 2016 Order is MODIFIED in part, insofar as the Court limits conditional certification and authorizes distribution of notice only to outside loan officers who operated pursuant to an MSA with Douglas Elliman in New York between November 12, 2011 and the present.

The Court hereby AFFIRMS the May 20, 2016 Order with respect to the form of notice and duration of the opt-in period.

**SO ORDERED.**

Date: April 18, 2018
Central Islip, New York

/s/ (JMA)
Joan M. Azrack
United States District Judge