```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MICHAEL MCDERMOTT, and DOUGLAS
FINNEGAN, individually and on behalf of all
others similarly situated,

                           Plaintiffs,
                                                              REPORT& RECOMMENDATION
             -against-                                        CV 14-6657 (JMA)( GRB)


THE FEDERAL SAVINGS BANK,
JOHN T. CALK, and STEVE CALK,

                           Defendants.
-----------------------------------------------------------X
```

**GARY R. BROWN, United States Magistrate Judge:**

Following the conditional certification of a collective action pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"), plaintiffs have moved for equitable tolling of the relevant statute of limitations based upon the litigation delays prior to the issuance of notice to potential collective action plaintiffs. This motion has been referred to the undersigned by the Honorable Joan M. Azrack for decision. Docket Entry ("DE") 47; Order dated June 8, 2015; Referral Order dated Mar. 11, 2016.[1]

## BACKGROUND

The relevant procedural history of this action includes the following:

---

[1] While this motion was addressed to undersigned, there is a reasoned argument that a decision on a motion for equitable tolling could, depending on a number of circumstances, be viewed as "claim dispositive," and therefore inappropriate for final determination by the undersigned without consent of the parties. *See, e.g., Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14CV2275 (JGK) (DF), 2016 WL 11271874, at *1 (S.D.N.Y. Nov. 4, 2016), report and recommendation adopted, No. 14-CV-2275 (JGK), 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017) ("the requested sanction, if granted, would effectively be claim dispositive, and therefore this Court is issuing this Report and Recommendation to recommend an appropriate resolution of the motion.") Certainly there is authority for such a motion to be determined via a Report and Recommendation. *See, e.g., Dillon v. Conway*, 642 F.3d 358, 361 (2d Cir. 2011) (reviewing equitable tolling motion decided via a Report & Recommendation). As such, this decision has been styled as a Report and Recommendation.

On November 12, 2014, plaintiff Michael McDermott, who previously worked as a loan officer in this judicial district, commenced this putative collective action against his former employer, defendant The Federal Savings Bank ("FSB"), and two of FSB's officers, defendants John T. Calk and Steve Calk, for the alleged failure to pay minimum and overtime wages in willful violation of the FLSA, and a parallel claim under New York Labor Law.  Compl., DE 1.  On December 18, 2014, named plaintiff Douglas Finnegan, a previous loan officer who worked in Illinois, joined this action, alleging similar overtime and unpaid wage violations under the FLSA, and Illinois Minimum Wage Law.  Am. Compl., DE 13.  Ten opt-in plaintiffs subsequently joined this action. DE 7, 10-13, 31-35, 37; Reilly Decl. Ex. A, DE 49.

On May 13, 2015, plaintiffs' counsel filed a pre-trial motion letter seeking a briefing schedule for a motion for conditional certification of a collective action.  Notably, in that letter, plaintiffs' counsel raised the specter of the statute of limitations, observing that "FLSA collective action claims are not tolled by the filing of the complaint."  DE 36 at 2 (citing cases and statutory authority).  That pre-motion letter, along with any resulting motion, was referred to the undersigned for consideration. Order dated June 8, 2015.  As such matters are often routinely handled, in lieu of a court conference, the undersigned directed the parties "to meet and confer, and by July 15, 2015, file a stipulation consenting to the conditional certification of collective action, or submit a joint briefing schedule regarding plaintiffs' motion."  Electronic Order dated June 15, 2015.  While the Court endeavored, unsuccessfully, to effect a voluntary resolution of this matter at an initial conference on July 14, 2015, the parties could not reach a resolution, and a motion schedule was set the next day.  DE 39.  However, some details of the conference are relevant here and are discussed further below.

Pursuant to the schedule, plaintiffs filed a fully briefed motion to conditionally certify a

2

collective action consisting of 609 outside sales loan officers and facilitate notice on September 21, 2015, which was expressly referred to the undersigned for consideration by the district court. DE 47; Referral Order dated Mar. 11, 2016. While that matter was pending, discovery in this action proceeded apace (often requiring court intervention), leading defendants to seek leave on March 9, 2016, to file a sur-reply brief with supporting evidentiary material based upon evidence gathered during discovery. DE 71. Leave was granted the next day, and those papers were filed immediately. Order dated March 9, 2016; DE 72. Plaintiffs, in turn, moved to for leave to file a sur-sur-reply brief, for which leave was granted and plaintiffs' submission was filed on April 15, 2016. DE 75; Order dated March 18, 2016; DE 77.

On May 20, 2016, the undersigned issued a Memorandum and Order granting, as relevant herein, the motion, noting that "plaintiffs here have made a modest factual showing sufficient for conditional certification of a nationwide class." DE 80. On June 3, 2016, defendants filed an appeal of that Order, arguing that, among other things, additional evidence established that the plaintiffs had failed to make a showing that the putative plaintiffs were sufficiently similarly situated to warrant the conditional certification of a collective action. DE 81. That appeal was fully briefed by June 24, 2016.

While the appeal was pending, on March 23, 2017, plaintiffs made a motion to equitably toll the statute limitations. DE 90. On April 25, 2017, the undersigned denied that motion without prejudice as premature. Electronic Order dated April 25, 2017. By Memorandum and Order dated April 18, 2018, Judge Azrack modified the undersigned's order granting collective certification. DE 95. In sum and substance, Judge Azrack found that plaintiffs had not satisfied the requisites for conditional certification as to the nationwide collective, but did find that, as to a smaller group of potential plaintiffs subject to a Marketing Services Agreement (the "MSA"), most of whom worked in New York, conditional certification was appropriate. *Id.*

3

On April 19, 2018, plaintiffs renewed their motion for equitable tolling, which was fully briefed by April 27, 2018. DE 96. At a court conference on July 26, 2018, the Court again spent "a substantial amount of time" with the parties in an unsuccessful effort to settle the case, after which the undersigned declared the settlement conference terminated and proceeded to hold oral argument on the instant motion. DE 122 at 4. Following oral argument, additional information was obtained from the parties. Electronic Order dated July 27, 2018; DE 118, 120, 122. Meanwhile, on May 23, 2018, plaintiffs' counsel provided notice to approximately 48 additional plaintiffs, and 14 additional plaintiffs joined the action[2] (hereinafter the "2018 Opt-Ins"). DE 118-1 & 118-2. That notice was provided in mid-2018, more than three years after the termination of their employment with the defendants (as none continued employment past March 31, 2015), and hence after the expiration of the three-year FLSA statute of limitations. Plaintiffs seek equitable tolling primarily on the grounds of litigation delay.[3] This opinion follows.

## DISCUSSION

As the United States Supreme Court has held:

It is hornbook law that limitations periods are "customarily subject to 'equitable tolling,' " *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), unless tolling would be "inconsistent with the text of the relevant statute," *United States v. Beggerly*, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998*). See also American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 558–559, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Bailey v. Glover*, 21 Wall. 342, 349–350, 22 L.Ed. 636 (1875). Congress must be presumed to draft limitations periods in

---

[2] Together with the named plaintiffs and others who had opted-in at earlier junctures, the addition of the 14 2018 Opt-Ins brings the number of plaintiffs in this case to 35. DE 118-2.
[3] On this motion, plaintiffs appear to seek equitable tolling on behalf of all 609 putative plaintiffs. DE 118 at 2. Plaintiffs' counsel has not cited any authority supporting their ability to seek this remedy for putative plaintiffs who have been explicitly excluded from this collective action, *see* DE 95, and neither law nor logic suggests otherwise. Moreover, as to counsel's supposition that Judge Azrack's order is "in effect, a decertification" of plaintiff Finnegan and eight other opt-in plaintiffs who worked in Illinois, this supposition, as well as the question of equitable tolling as to these individuals is not properly before this Court. As such, this Report & Recommendation is limited to the issue of equitable tolling as to the 2018 Opt-Ins.

4

light of this background principle. *Cf. National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 589–590, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995); *United States v. Shabani*, 513 U.S. 10, 13, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).

*Young v. United States*, 535 U.S. 43, 49-50 (2002). At the same time, "equitable tolling is only appropriate 'in [ ] rare and exceptional circumstance[s]' in which a party is "prevented in some extraordinary way from exercising his rights.'" *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003). Instances in which equitable tolling may be properly applied include cases "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period" or those in which a "plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant." *Brown v. Parkchester S. Condos.,* 287 F.3d 58, 60 (2d Cir. 2002) (citation omitted); *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir.1985).[4] "The virtue of relying on equitable tolling lies in the very nature of such tolling as the exception, not the rule." *Rotella v. Wood*, 528 U.S. 549, 561 (2000).

More generally, in determining whether to apply the doctrine of equitable tolling, a court must determine "whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass,* 333 F.3d at 80–81 (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir.2002)). These two elements – diligence and extraordinary circumstances are examined below.

### A. Litigation Delay in the Conditional Certification of a Collective Action

The first question presented is whether litigation delay can constitute extraordinary circumstances warranting the application of equitable tolling. Defendants cite several cases in

---

[4] For avoidance of doubt, in this matter there has been neither evidence of, nor any substantiated argument suggesting that the delay at issue resulted from any misconduct by defendants.

5

which courts found that litigation delay did not justify application of the doctrine. *See, e.g. Morrison v. Ocean State Jobbers, Inc.,* 180 F. Supp. 3d 190, 199 (D. Conn. 2016) (FLSA class action plaintiffs "have not met their burden of demonstrating the existence of extraordinary circumstances [by pointing to] a normal litigation delay") (collecting cases). Other courts have held that "delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." Y*ahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 SLT, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (collecting cases). One district court considered the fact that the delay was due in part to "Defendants' request to conduct limited discovery on Plaintiffs' motion to conditionally certify" as was the case here. *Abadeer v. Tyson Foods, Inc*., No. 3:09-0125, 2010 WL 5158873, at *1 (M.D. Tenn. Dec. 14, 2010).

For a variety of reasons (including robust litigative effort by both sides), more than 30 months elapsed between plaintiffs' initial filing of a motion for collective certification in September 2015 until the conditional certification of a modified collective action in April 2018. Generally, the standard for conditional certification before discovery is "minimal," requiring only a "modest factual showing sufficient to demonstrate that [plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Puglisi v. TD Bank, N.A.,* 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014) (citation omitted). This process "*generally* takes place before any significant discovery" (though that was not true in this case) and "the Court need not evaluate the merits of plaintiffs' claims" before conditionally certifying a collective. *Id.* (emphasis added). Because this process took longer than anticipated, the undersigned will assume, for the purposes of this motion, that such a delay would be viewed as an extraordinary circumstance that could satisfy the second prong of the equitable tolling standard. As such, the Court turns to the question of diligence.

### B. Diligence in the Pursuit of Judicial Remedies

Evaluating the diligence factor requires greater analysis in this case. There is a significant division of authority on the question of whose diligence should be considered – that of the named plaintiffs as represented by their counsel, or that of the potential opt-in claimants. Several well-reasoned opinions have equitably tolled the statutes of limitations based upon the diligence demonstrated by named plaintiffs and their counsel. *See, e.g., Cabrera v. Stephens*, 16-CV-3234 (ADS) (SIL), 2017 WL 4326511, at *7 (E.D.N.Y. Sept. 28, 2017) ("Absent tolling of the limitations period, a substantial number of class members may now be time-barred through no fault of counsel or the class representative"); *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 (SLT), 2011 WL 844963, at *3 (E.D.N.Y. Mar. 8, 2011) ("This procedural history demonstrates that plaintiffs have vigorously pursued their claims and, through no fault of their own, have been delayed in prosecuting their action and distributing 216(b) notice to potential opt-in plaintiffs").

At the same time, there are a number of cases that, drawing largely on *dicta* from the Supreme Court and the Second Circuit, hold that diligence should be measured against the actions of the potential opt-in plaintiffs. In *Contrera v. Langer*, 278 F. Supp. 3d 702 (S.D.N.Y. 2017), one court expounded upon this apparent split in authority:

> We are aware that some courts in this district have assessed the actual (or "named") plaintiff's diligence when granting equitable tolling in this context. *See Flood v. Carlson Rests. Inc.*, 2015 WL 260436, at *6 (S.D.N.Y. Jan. 20, 2015) (granting equitable tolling for opt-in plaintiffs "in light of Plaintiffs' diligence in pursuing the FLSA claims on behalf of putative opt-ins"); *McGlone v. Contract Callers, Inc.*, 867 F.Supp.2d 438, 445 (S.D.N.Y. 2012) (granting equitable tolling for opt-in plaintiffs because "those whose putative class representatives and their counsel are diligently and timely pursuing the claims should [ ] not be penalized due to the courts' heavy dockets and understandable delays in rulings"). However, the test for equitable tolling is not concerned with the diligence of a plaintiff who has already timely filed a claim, but rather with the diligence of a plaintiff who is seeking the application of the doctrine. As the Second Circuit has formulated the rule, "when determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2)

> has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli–Edelglass, 333 F.3d at 80–81 (emphasis added) (internal quotation marks and citations omitted).
>
> In their brief, plaintiffs cite to *McGlone*, 867 F.Supp.2d at 445, which held that the time period spent by a court deciding a motion for conditional approval may by itself allow for the application of the equitable tolling doctrine. *See* Pls. Mem. at 24. *McGlone* ruled that "the delay caused by the time required for a court to rule on a motion" for conditional approval of a collective action "may be deemed an extraordinary circumstance justifying" equitably tolling the statute of limitations. 867 F.Supp.2d at 445 (*quoting Yahraes*, 2011 WL 844963, at *2) (internal quotations marks omitted). Indeed, other cases have similarly ruled. *See, e.g., Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 346, 354–57, 2017 WL 2473252, at *1, *8–9 (S.D.N.Y. June 8, 2017); *Varghese v. JP Morgan Chase & Co.,* 2016 WL 4718413, at *10–11 (S.D.N.Y. Sept. 9, 2016); *Tubiak v. Nielsen Co. (U.S.), LLC,* 2016 WL 796861, at *4 (S.D.N.Y. Feb. 25, 2016); *Reyes v. N.Y. F & B Serv. LLC,* 2016 WL 796859, at *5 (S.D.N.Y. Feb. 22, 2016).
>
> These cases, however, do not conform to the equitable tolling doctrine as described by the Supreme Court and the Second Circuit. Some of the cases provide no reasoned argument as to why the equitable tolling doctrine applies but simply cite to other cases that allowed for delays in adjudicating a motion to support equitable tolling. *See Reyes*, 2016 WL 796859, at *5; *Colon*, 2013 WL 3328223, at *8. Others characterize the period of time taken to decide the motion for conditional approval as "extraordinary" and use that delay alone as a basis for finding equitable tolling. *See Viriri*, 2017 WL 2473252, at *8–9; *Varghese,* 2016 WL 4718413, at *10–11. We do not find these cases persuasive because by focusing exclusively on the time it took the court to decide the conditional approval motion, none make a finding that the opt-in plaintiffs for whom tolling is sought acted diligently in pursuing their rights. Thus, putting aside the question of whether a court's delay could qualify as "extraordinary" under the second prong of the equitable tolling test, we do not see how these decisions square with *Pace,* 544 U.S. at 418, 125 S.Ct. 1807, *Lawrence,* 549 U.S. at 336, 127 S.Ct. 1079, and numerous other Supreme Court cases that require a showing of diligence by a litigant seeking to toll a statute of limitations.

*Id*. at 724–25.

In this case, however, the Court need not resolve this issue. As demonstrated below, whether measured by the actions of the Opt-In Claimants or those of counsel for representative plaintiffs, plaintiffs have failed, on the uncommon facts of this case, to satisfy the diligence prong to warrant equitable tolling.

8

### 1. Exercise of Diligence by the 2018 Opt-Ins

To the extent that the pursuit of remedies by the 2018 Opt-Ins provides the appropriate yardstick, these individuals failed to pursue their rights with any sort of vigor. Indeed, the only identifiable action taken by these plaintiffs is the completion and return of opt-in forms within 60 days of the receipt of the collective action notice of this action. DE 99, 101-108, 110, 113-116. Yet, when compared to the actions of the 26 named and earlier opt-in plaintiffs, who sought out counsel and entered this case in a timely fashion, the 2018 Opt-Ins fail to demonstrate the necessary level of diligence.

"Generally, to merit equitable relief, a plaintiff must have acted with reasonable diligence *during the time period she seeks to have tolled.*" *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002) (emphasis added). While the 2018 Opt-Ins responded rapidly to the notice provided, they took no actions whatsoever during the period sought to be tolled. Such inattention to legal rights is particularly problematic in the context of an FLSA cause of action in which "each paycheck represents a potential cause of action." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198-99 (2d Cir. 2013) ("The cause of action for FLSA and NYLL claims accrues on the next regular payday following the work period when services are rendered") (citing 29 C.F.R. § 790.21(b)). And while the 2018 Opt-ins did not receive timely notice of this action, "[e]quitable tolling is not warranted merely because the plaintiff was unaware of his cause of action." *Derisme v. Hunt Leibert Jacobson P.C.,* 880 F. Supp. 2d 339, 356 (D. Conn. 2012) (citation omitted). Therefore, the 2018 Opt-Ins fail on this measure.

Another aspect of the conduct of the 2018 Opt-Ins proves troubling and, at least arguably, pertinent. Each of the 2018 Opt-Ins executed and filed, through counsel, a form that represents, in relevant part, as follows:

By signing below, I state that I have been employed by The Federal Savings Back

9

> [sic] et al. as a loan originator *within the past three (3) years* and that I worked more than forty (40) hours in at least one week and was not paid overtime.

DE 99, 101-108, 110, 113-116 (emphasis added).  Indisputably, the claimants did not work for the bank within the past three years, so that statement is untrue.  In fairness, this false assertion is somewhat mitigated by the fact that most of the 2018 Opt-Ins listed their dates of employment in a space provided at the bottom of the form.  However, at a minimum, the 2018 Opt-Ins began their belated judicial journey by filing a facially inconsistent form in federal court.  This filing could well bear on the assessment of their level of diligence as well as the propriety of the application of an equitable doctrine to these claims.

Lastly, in terms of equitable issues, plaintiff's counsel repeatedly invoked the specter of the "grave injustice" that would arise should the 2018 Opt-Ins "have their right to assert wage claims under *federal* law extinguished."  DE 118 at 2 (emphasis added).  Of course, this assertion does not tell the full story.  In addition to asserting claims under the FLSA, the amended complaint alleges wage claims under New York Labor Law in the form of a purported Rule 23 class action.  The rights afforded under the NYLL may well be coextensive with the protections of the FLSA, but are subject to a six-year statute of limitations.  *See* N.Y. Labor Law § 198(3); N.Y. Labor Law § 663(3).  Moreover, at least in theory, other putative class action members may have available remedies as alleged under the Illinois Minimum Wage Act, which may not be time-barred in the context of a Rule 23 class action.  The potential availability of these remedies for the 2018 Opt-Ins further weighs against the invocation of equitable tolling.

### 2. Exercise of Diligence by Counsel

Without question, counsel for the collective action zealously and aggressively pursued conditional certification for the nationwide collective.  Yet, some of the most interesting facets of litigation arise because cases happen against a backdrop of developing case law.  Less than a

fortnight before the July 14, 2015, conference, the Second Circuit issued a decision in *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2d Cir. 2015), *as amended* (Jan. 25, 2016), a case primarily concerned with questions relating to the creation of an employment relationship from unpaid internships. In that case, before the Circuit was an "appeal of the district court's order conditionally certifying Antalik's proposed nationwide FLSA collective" which included the question of "whether a higher standard, urged by defendants, applies to motions to conditionally certify an FLSA collective made after discovery." *Id*. at 539-40. The *Glatt* court ruled that the Court's test as to when an internship program creates an employment relationship effectively disposed of the question of whether the collective action could be certified. *Id.* at 540. At the same time, the Court of Appeals raised concerns, in *dicta*, that the "proposed collective presents an even wider range of experience than [the] proposed class because it is nationwide in scope, rather than limited to just New York interns." *Id.* This language informed the discussion that the undersigned had with counsel less than two weeks later, and proves extraordinary when viewed in hindsight.

In the wake of *Glatt*, the undersigned raised concerns about the effect of that decision on the proposed nationwide collective in this case. *See, e.g.* DE 123 at 7-8 (discussing the notion that *Glatt* raised issues concerning whether members nationwide collective, rather than a more limited collective action, would be deemed sufficiently similarly situated). This discussion led to a concession by counsel for *both* parties that potential plaintiffs who had been employed by Douglas Elliman (a group encompassing the 2018 Opt-Ins) represented a unique situation differentiating them from the other 600 potential plaintiffs. *Id.* at 6, 8; *see also id.* at 15 (defense counsel noting that "[w]e would certainly think D.E. Capital is a unique group").

The undersigned urged the parties to stipulate to the conditional certification of the Douglas Elliman MSA plaintiffs immediately. *Id.* at 8 ("to the extent that you wanted counsel

11

to agree to certify those employees who were in the D.E. Capital Group, I think he should do that"); *id.* at 10 ("I think counsel would probably agree, we could . . .agree to [pre]certify the 40 people in Douglas Elliman Group"); *id.* at 11("here's a distinct sub-group we can identify and [defendants] could consent to"); *id.* at 13 (discussion of providing immediate notice to 40-odd plaintiffs in Douglas Elliman group). Importantly, the stipulation proposed by the Court did not prohibit counsel from pursuing a nationwide collective action; rather, the proposal expressly reserved counsel's right to continue to litigate that question as appropriate. *Id.* at 10 (acknowledging counsel's right to "expand the collective action" based upon "additional discovery"); *id* at 12 (Court's proposal was "not foreclosing anything"); *id.* at 13 (discussion of pursuing conditional certification "in stages"); *id.* at 16 (proposed agreement related to conditional certification of MSA plaintiffs "pending the resolution of the rest of it"); *id.* at 24 (noting right to expand collective at a later date if warranted).

Notably, counsel for defendants, subject to final approval by their clients, agreed in principle to the Court's proposal to conditionally certify the limited collective action. *Id.* at 16 (defense counsel noting that "I have not had a conversation with my client but my guess is the answer would be yes"). Equally notable is the fact that plaintiffs' counsel indicated an unwillingness to agree to the Court's proposal. *Id.* at 14 ("I'd rather not do it in stages, Judge"). The Court specifically cautioned counsel that his refusal to consent to this proposal – which seemed to hold no downside for plaintiffs – would effectively delay prosecution of the case "while you get a determination," and present increased litigation risk.[5]  *Id.* at 13 ("we can

---

[5] The discussion at the July 14, 2015, conference proved prescient, as Judge Azrack ultimately determined – after extensive litigation – that the individuals subject to the Douglas Elliman Marketing Service Agreement represented the *only* group of potential plaintiff entitled to conditional certification as a collective action. DE 95 at 10 (finding that the MSA plaintiffs "are sufficiently similar such that conditional certification is appropriate for that more limited [collective]," but holding that "plaintiffs have failed to show that all [loan officers in the proposed nationwide collective] are similarly situated").

fight about this for a long time"); *id.* at 17 (observing that counsel could be unsuccessful on the motion for conditional certification of a nationwide collective). Moreover, the undersigned repeatedly urged plaintiffs' counsel to reconsider this position, and directed defense counsel to review the proposal with his client and advise the Court if such a stipulation would be entered. *Id.* at 17 ("When you get back to your office, please read [*Glatt*]. You might change your view."); *id.* at 20-21 (directing defendants' counsel to discuss proposed stipulation regarding conditional certification with his clients and noting that plaintiffs' counsel "doesn't seem inclined to agree, but maybe you'll take my advice and read the *Fox Searchlight Pictures* case and you'll be persuaded [and] let me know tomorrow, if we could reach that agreement").

The letter filed by plaintiffs' counsel on July 15 makes no mention of the potential for agreeing to a smaller collective, even on an interim basis, but simply sets forth the schedule for the motion for conditional certification. DE 40. While it is conceivable that defendants ultimately refused to agree to conditional certification of the smaller group, no such indication has been received by the Court. In any event, nothing precluded plaintiffs' counsel from making a more limited application for conditional certification on behalf of the potential claimants who would later become the 2018 Opt-Ins, which motion would have served to protect their rights on a more expedited basis.

Therefore, based on counsel's failure to pursue conditional certification of a more limited collective either on consent or by motion, it cannot be concluded that "plaintiffs . . . through no fault of their own, have been delayed in prosecuting their action and distributing 216(b) notice to potential opt-in plaintiffs." *Yahraes v. Rest. Assocs. Events Corp.,* 2011 WL 844963, at *3. Similarly, plaintiffs were not "prevented in some extraordinary way from exercising [their] rights." *Zerilli-Edelglass*, 333 F.3d at 80. And while plaintiff's counsel may, in this instance have pursued this matter aggressively (to a fault), each 2018 Opt-In has agreed to be

13

represented by present counsel and are therefore bound by counsel's actions. *See, e.g.* DE 99 (designating plaintiffs' counsel "to represent me for all purposes of this action"); *Link v. Wabash R. Co.,* 370 U.S. 626, 634, 82 S. Ct. 1386, 1390 (in "our system of representative litigation . . . each party is deemed bound by the acts of his lawyer-agent"); *cf. Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 263 (S.D.N.Y. 1997) ("Section 216(b), which provides for collective actions under the FLSA, is silent on the issue of adequacy of representation").

## CONCLUSION

Based on the unusual facts of this case, the undersigned finds that plaintiffs have failed to make the necessary showing to warrant the application of equitable tolling, and respectfully recommends that plaintiffs' motion be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to the parties via ECF. Furthermore, the Court directs plaintiff (1) to serve copies of this Amended Report and Recommendation by overnight mail to defendants at the last known addresses, and (2) to file proof of service on ECF within two days.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  28 U.S.C. § 636(b)(1) (2006 & Supp. I 2018); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.** *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.")

Dated: Central Islip, New York
      September 28, 2018

                                            /s/ Gary R. Brown
                                            GARY R. BROWN
                                            United States Magistrate Judge